BARTON v. WALKER.

4-8124                                    200 S. W. 2d 801

Opinion delivered April 7, 1947.

*J. F. Quillin,* for appellant.

*Abe Collins,* for appellee.

SMITH, J. This suit was brought to recover the value of certain property alleged to have been sold by the defendants to the plaintiffs, which the defendants did not own. There was a verdict and judgment for the defendants from which is this appeal. A reversal of this judgment is asked upon the grounds that the court erred in giving certain instructions and in refusing to give certain others.

The defendants, Marvin and Lona Walker, husband and wife, owned a lot in the town of Cove, Polk county, on which there was a filling station. They had given a lease on this lot to one Yahraus, who was the distributing agent for the Conoco Oil Company in that territory, which was recorded, but which did not describe or refer to the property in question. After procuring this lease Yahraus and the Walkers entered into a contract providing for the use of certain filling station equipment which Yahraus owned, with the right to remove upon the termination of the contract. Yahraus testified that the custom in that area was almost universal for the oil companies, or their distributing agents, to own the equipment, the purpose being to control the sale of oil and gas used in the station.

At the time of making the contract, out of which this litigation arose, Walker was in the naval service, stationed in Oregon, and his wife resided there with him.

The Walkers had employed one Jim Ross to operate the station, and Ross was operating it when the plaintiff Barton applied to Ross to purchase it. Ross had no authority to sell, but there was a discussion of the terms upon which it was thought a sale could be made, and a telegram was prepared which was dictated by Barton, but written and paid for by Ross reading: "B. H. Barton offers $5,000 inside and out less clothing." There was a room in the station which appears to have been used as living quarters. Ross took the telegram to the telegraph office, but before sending it struck out the

words "less clothing" and inserted the words "less personal property."

Upon receipt of the telegram, Walker obtained a leave of absence and returned home to close the deal upon the terms as he understood the telegram. Upon his arrival at Cove he learned that Barton had not sent the telegram which he received. There was a discussion which continued over until the following day. Mrs. Walker announced that she would not sell unless certain things which she had in the building were excepted from the sale, and that concession appears to have been made.

The Walkers removed their personal effects, and there appears to have been no objection to this action, but Barton testified that Walker removed certain other articles without his knowledge or permission, including an electric fan and certain aluminum ware. Barton testified that they finally agreed on everything which was being reserved and not sold except a refrigerator and a bedroom suite, and this difference was finally settled when Walker proposed and Barton agreed that Walker might retain the refrigerator and the bedroom suite provided Walker would order and pay for 200 gallons of a high grade of gasoline to be placed in one tank, and 250 gallons of a lower grade of gasoline to be placed in another tank. The gasoline was delivered as agreed and was paid for by Walker. Barton testified that he gave Walker a check for $5,000 upon the assumption that he had acquired title to everything in and connected with the filling station, which had not been reserved, and that there was never at any time any intimation that the filling station equipment, including tanks, pumps, etc., were not being sold.

Walker testified that when the difference in the telegram which Barton authorized Ross to send and the one which Ross did send was discovered, the deal was called off. Ross candidly admitted that he had made the change without Barton's knowledge or consent. Walker testified that the day after he had called the deal off, Barton came to the station, sat down at a table and asked, "What I

would have to keep and make a trade, so when I put in some personal things that wasn't supposed to go according to the deal before and he said yes and traded." Walker further testified, "Before we finally traded we were walking around and he was just looking, and I told him all that was there was mine except the company equipment. He never asked any questions and I presumed that he knew what the company equipment was. I told him the company equipment did not go in the deal, and he did not ask any questions whatever."

This testimony was categorically denied by Barton, who testified nothing was said about company equipment, and that he had no knowledge that anything was not being sold except those items which it was agreed should be reserved, and that the protracted discussion of these items could have left no doubt that Walker knew he thought he was buying everything that had not been reserved from the sale.

After operating the station about a month, Barton learned that certain equipment which he thought he had bought was the property of Yahraus, whereupon he brought this suit. At the trial Walker proposed to refund the money paid him and to rescind the sale, but when the proposition was accepted, Walker refused to carry through his proposition.

Plaintiff asked an instruction to the effect that if Walker "permitted the plaintiff to believe, or lead the plaintiff to believe he was obtaining property from the defendant which the defendant did not own" there was liability for the value of the property sold which the defendant did not own. The court modified the instruction by striking out the phrase "permitting the plaintiff to believe" and gave the instruction as modified, and an exception was saved to the modification. We think the instruction as modified correctly declared the law applicable to the facts in issue. It declared the defendants liable if they "lead the plaintiff to believe." This might have been done by action, or by inaction, which lead the plaintiff to believe that he was buying property which the seller did not own, or did not intend to sell,

in which event there would be a liability as declared in the instruction given as modified. But unless by some action or inaction on Walker's part, Barton was misled as to what was being sold, there was no liability.

These principles are discussed in the annotated case of *Donovan* v. *Aeolian Co.*, 270 N. Y. 267, 104 A. L. R. 549, 200 N. E. 815. In that case a piano was purchased under the impression it was new when in fact it was second-hand. The seller made no direct affirmation that the piano was new or unused. In the body of that opinion it was said: "If the seller does not know that the buyer is acting under the belief that the article is new and unused, and has done nothing to induce that belief, the buyer cannot complain. There is no duty upon the seller to speak where silence does not constitute deception. Silence may, however, constitute fraud and deception where the seller has notice that the buyer is acting upon a mistaken belief as to a material fact. It depends upon the circumstances of each case whether failure to disclose is consistent with honest dealing. Where failure to disclose a material fact is calculated to induce a false belief, the distinction between concealment and affirmative misrepresentation is tenuous. Both are fraudulent."

An instruction was given, however, which we think was error requiring reversal of the judgment. It reads as follows:

"You are instructed that the plaintiff was charged with notice of all matters appearing of record and affecting the title to the property in controversy as well as the rights of the parties in possession of same other than the defendants."

As has been said, Walker had given Yahraus a lease on the property, which was of record, but there is no controversy about the title to the lot. This lease makes no reference to the personal property which Yahraus allowed Walker to use. There was a written agreement between Yahraus and Walker as to the use of this property which was offered in evidence, but which had not been recorded, and the instruction charges the jury with

notice of the rights of the parties in possession of same other than the defendants, and the specific objection was made that there was no testimony that anyone other than Walker was in possession of the property. The instruction was confusing and may well have been misleading, and we think it was error to give it.

When the suit was brought a writ of garnishment issued which tied up $2,500 of money Walker had on deposit in a bank. When the verdict was returned in favor of the defendant, the garnishment was discharged and without submitting the question of damages to the jury, the court rendered judgment in the sum of $100 as damages. While this was irregular and did not conform to the proper practice, we cannot say that it was erroneous, if a cause of action did not exist, as was found by the jury, for the reason that the money was impounded for eight months, and the interest thereon for the time it was impounded at six per cent. would be $100.

For the error indicated the judgment is reversed, and the cause will be remanded for new trial.

Mr. Justice MILLWEE not participating.